UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-60789-COHN/STRAUSS

CREATIVE KLICK AGENCY, LLC,

    Plaintiff,

v.

IGNITE INTERNATIONAL, LTD., et al.

    Defendants.
_____/

## IGNITE INTERNATIONAL, LTD.'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant, Ignite International, Ltd. ("Ignite"), by and through its undersigned counsel, answers the Complaint and Demand for Jury Trial ("Complaint") filed by Plaintiff, Creative Klick Agency, LLC, Inc. ("Plaintiff" or "Creative Klick") as follows:

1. The allegations of paragraph 1 of the Complaint do not require a response from Ignite. To the extent paragraph 1 alleges facts, Ignite denies the allegations in paragraph 1 of the Complaint.

## PARTIES

2. Ignite lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2 of the Complaint, and on that basis denies them.

3. Admitted that Ignite is a Wyoming corporation. Ignite denies that its principal office is located at 3275 S. Jones Blvd., Suite 105, Las Vegas, Nevada 89146.

4. Admitted.

5. Admitted.

6. Ignite is without knowledge of anyone named Daniel Bilzerian. Dan Bilzerian is a resident of Nevada.

7. Ignite lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 7 of the Complaint, and on that basis denies them.

8. Ignite denies the allegations of paragraph 8 of the Complaint.

9. Ignite denies the allegations of paragraph 9 of the Complaint.

10. Ignite lacks knowledge or information to form a belief about the truth of the allegations in paragraph 10 of the Complaint, and on that basis denies them.

## JURISDICTION AND VENUE

11. The allegations of paragraph 11 of the Complaint are legal conclusions which do not require a response from Ignite. To the extent paragraph 11 alleges facts, Ignite denies the allegations in paragraph 11 of the Complaint.

12. Ignite denies the allegations of paragraph 12 of the Complaint. To the extent paragraph 12 of the Complaint contains legal conclusions, they do not require a response from Ignite.

13. The allegations of paragraph 13 of the Complaint are legal conclusions which do not require a response from Ignite. To the extent paragraph 13 alleges facts, Ignite denies the allegations in paragraph 13 of the Complaint.

## ALLEGATIONS OF FACT COMMON TO ALL COUNTS

14. Ignite lacks knowledge or information to form a belief about the truth of the allegations in paragraph 14 of the Complaint, and on that basis denies them.

15. Ignite denies that Defendant, Dan Bilzerian, is the owner of Ignite. Ignite lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 15 of the Complaint, and on that basis denies them.

16. Denied.

17. Admitted.

18. Ignite lacks knowledge or information to form a belief about the truth of the allegations in paragraph 18 of the Complaint, and on that basis denies them.

19. Denied.

20. Denied.

21. Denied.

22. Denied.

23. Ignite admits that the photographs attached as Composite Exhibit A to the Complaint were provided to Taylor Bell of Ignite as samples it was free to use. Ignite denies the remaining allegations of paragraph 23 of the Complaint.

24. The image of the email provided in paragraph 24 of the Complaint speaks for itself. Ignite denies the remaining allegations of paragraph 24 of the Complaint.

25. The image of the email provided in paragraph 25 of the Complaint speaks for itself. Ignite denies the remaining allegations of paragraph 25 of the Complaint.

26. Ignite lacks knowledge or information to form a belief about the truth of the allegations in paragraph 26 of the Complaint, and on that basis denies them.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

## Count I – Willful Copyright Infringement

33. Ignite incorporates its responses to paragraphs 1 to 32 of the Complaint.

34. Denied.

35. Ignite lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 35 of the Complaint, and on that basis denies them.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

## Count II – Contributory Copyright Infringement

44. Ignite incorporates its responses to paragraphs 1 to 43 of the Complaint.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

## Count III – Vicarious Copyright Infringement

49.   Ignite incorporates its responses to paragraphs 1 to 48 of the Complaint.

50.   Denied.

51.   Denied.

52.   Denied.

53.   Denied.

## AFFIRMATIVE DEFENSES

Ignite asserts the following affirmative defenses to the Complaint. Ignite undertakes the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated below. Ignite expressly reserves the right to plead additional affirmative and other defenses should any such defenses be revealed by discovery or additional investigation in this case.

## First Affirmative Defense - License

Creative Klick consented to the use of the photographs at issue ("Photos") for the purpose of promoting Ignite Spirits vodka. Taylor Bell at Ignite contacted the CEO and Co-Founder of Creative Klick, Jennifer DiGirolamo about including a few shots of the Ignite Spirits vodka among the photographs to be taken at a previously scheduled photoshoot for a different product. DiGirolamo agreed to do so and did not indicate that an additional charge would be associated with the Photos. Instead, the Photos were part of a larger photoshoot for which Plaintiff was paid $3,000.00, pursuant to an invoice which stated the Photos may be used for "social media + web". Indeed, Creative Klick represented that the Photos were free. As of February 11, 2021, the Photos were no longer used by Ignite Spirits. To the extent use was made, the use was consented to by Plaintiff and was pursuant to a license from Plaintiff by virtue of that consent.

### Second Affirmative Defense – No Infringement

Plaintiff's claim must fail because there is no infringement. Ignite did not copy any protected expression in Plaintiff's designs or products. Plaintiff's copyrights do not encompass all images of vodka produced by Ignite Spirits, Inc. and to the extent any such images may have been copied, Ignite did not make such copies or otherwise infringe any valid copyright of Plaintiff.

### Third Affirmative Defense – Copyrights are Invalid

Plaintiff's claim must fail because Plaintiff's copyrights are invalid. Plaintiff's claim of copyright includes goat skulls, bottles, logos, designs and stock art. Plaintiff's claim is therefore invalid because these items were not created by Plaintiff and existed long before Plaintiff created its Photos or registered its designs. Plaintiff did not limit its claim to disclaim any such material in its copyright registration, thereby invalidating its registration. Were the copyright claim limited to exclude pre-existing material, the remainder in the alleged work of authorship contains at most *de minimis* protected expression, insufficient to support a claim for copyright protection. Accordingly, Plaintiff's copyrights are invalid because they falsely claimed ownership of material not authored by the claimant in their application for registration, and/or lack copyrightable subject matter when pre-existing material is acknowledged, and/or falsely claimed ownership of protected expression the claimant did not create.

### Fourth Affirmative Defense – Estoppel

For the reasons set forth in the First Affirmative Defense, Plaintiffs' claims are barred, in whole or in part, by their own conduct, actions, and inaction, which amount to and constitute an estoppel as to all relief sought.

### Fifth Affirmative Defense – Unclean Hands

For the reasons set forth in the First and Third Affirmative Defenses, Plaintiffs are barred from recovery under the doctrine of unclean hands.

### Sixth Affirmative Defense – Waiver

For the reasons set forth in the First Affirmative Defense, Plaintiffs are barred from recovery under the doctrine of waiver.

### Seventh Affirmative Defense – Protectable Expression

Plaintiff's claims must fail because, for at least the reasons set forth in the Third Affirmative Defense, even if Ignite had copied Plaintiff's Photos, that which would have been copied, would not have been protected expression.

### Eighth Affirmative Defense – De Minimis Infringement

Plaintiff's claims must fail because, for at least the reasons set forth in the Third Affirmative Defense, even if Ignite had copied Plaintiff's copyrights or designs, that which would have been copied, would have been *de minimis*, *scenes a fair*, or not protected pursuant to the merger doctrine.

### Ninth Affirmative Defense – No Damages

Plaintiff's claims must fail in whole or in part to the extent Plaintiff has suffered no damage caused by Ignite.

### Tenth Affirmative Defense – No Irreparable Harm

Plaintiff is not entitled to injunctive relief because any alleged injury to Plaintiff is not immediate or irreparable, and plaintiff has an adequate remedy at law.

### Eleventh Affirmative Defense – No Financial Benefit

Plaintiff's claims for vicarious infringement and contributory infringement must fail because Ignite did not profit from any alleged infringement by another party.

### Twelfth Affirmative Defense – No Control

Plaintiff's claims for vicarious and contributory infringement must fail because Ignite does not have the ability to control or supervise the activities of any alleged direct infringer.

### Thirteenth Affirmative Defense – Accord and Satisfaction

Despite Plaintiff's representations that the Photos were free or part of an existing photoshoot for which Plaintiff was paid $3,000, Ignite offered $1,500 to resolve any dispute with Creative Klick. Creative Klick accepted Ignite's offer by issuing an invoice in the amount of $1,500 for the "Ignite Vodka Project". The invoice also indicated the Photos could be used for social media and the web. One day after sending the second invoice, Plaintiff withdrew it and instead decided to pursue this lawsuit. Plaintiff's attempt to withdraw the invoice after having issued it is insufficient to negate the fact that an accord and satisfaction was reached between the parties.

### COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Defendant/Counterclaim Plaintiff/Third-Party Plaintiff, Ignite International, Ltd. ("Ignite") files this counterclaim against the Plaintiff/Counterclaim Defendant Creative Klick Agency, LLC ("Creative Klick") and third-party complaint against Jennifer DiGirolamo ("DiGirolamo"), and states:

### Nature of Action and Relief Sought

1. This is an action under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., seeking a declaration that Creative Klick's copyright registration is invalid. This is an also an

8

126296069.1

action against Creative Klick for promissory estoppel, breach of third-party beneficiary contract or in the alternative breach of an oral contract, and breach of settlement agreement. This is also an action against DiGirolamo for fraudulent inducement.

## Parties

2. Ignite is a Wyoming corporation with its principal place of business in California.

3. Creative Klick is a Florida limited liability company with its principal address at 10560 NW 56th Drive, Coral Springs, Florida 33076.

4. Upon information and belief, DiGirolamo is an individual and is a resident of Broward County, Florida and is otherwise *sui juris*.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over the claims stated herein because they arise out of the same transactions or occurrences that are the subject matter of the Complaint. The same operative facts serve as the basis of both sides' claims and the counterclaim is so related to the Creative Klick's claims that they are part of the same case or controversy.

6. This Court also has subject matter jurisdiction over this action pursuant to Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. Thus, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331.

7. This Court has personal jurisdiction over the Creative Klick and DiGirolamo because, upon information and belief, each has established minimum contacts with this forum and further, each has substantial, continuous, and systematic contacts with the State of Florida.

8. Creative Klick and DiGirolamo purposefully availed themselves of the privilege of conducting business in this State and in this District and are continuously present in this State.

9. In addition, Creative Klick's false assertions of infringement of their alleged copyrights were directed to Ignite in a lawsuit filed in this District.

10. Thus, this Court has both general and specific personal jurisdiction over Creative Klick and DiGirolamo.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because, upon information and belief, a substantial part of the events giving rise to Ignite's claims occurred in this District and because the Creative Klick and DiGirolamo are subject to personal jurisdiction in this District.

## Facts

12. Ignite is a global lifestyle brand that encompasses a number of different products, including vodka sold through Ignite Spirits, Inc. and boasts an impressive 3.1 million followers on Instagram.

13. Ignite Spirits, Inc. is a wholly-owned subsidiary of Ignite.

14. Creative Klick, according to its website, is a "full-service branding, marketing and web agency" that works on "photography" among other activities. *See* creativeklick.com/about-us.

15. 42 Bio, Inc. ("42 Bio"), a third party whose personnel sometimes perform services for Ignite, arranged for Creative Klick to do a product photoshoot on January 25, 2021. As a result, on January 11, 2021, Creative Klick issued an invoice ("January 2021 Invoice") to 42 Bio in the amount of $3,000.00 for the January 25th photoshoot. A copy of the January 2021 Invoice is attached as **Exhibit 1.**

16. The January 2021 Invoice was promptly paid by 42 Bio.

17. The January 2021 Invoice was for images that could be used "on social media + web." Ex. 1.

18. Before the January 25th photoshoot, Taylor Bell contacted DiGirolamo, the CEO and Co-Founder of Creative Klick, about having Creative Klick take some photos of Ignite Spirits' vodka at the January 25th photoshoot.

19. DiGirolamo agreed that Creative Klick would take some photographs of the vodka product at the existing photoshoot.

20. DiGirolamo never stated that Creative Klick would charge a separate fee for the photographs of the vodka product, or that the additional photos would be subject to any terms or conditions different from the remaining photos that would be taken at the photoshoot. To the contrary, DiGirolamo represented that the photographs of the vodka product were done at no additional charge as part of the pre-arranged photoshoot and were free to be used under the same terms as the other photos taken at that photoshoot. Specifically, DiGirolamo stated: "all of the images for Genix and a select few for Ignite since we did them for free will be sent all together[.]"

21. Creative Klick sent four photographs ("Photos") of the Ignite Spirts' vodka to Ignite's employees. The Photos are attached to Creative Klick's Complaint as Composite Exhibit A.

22. The Photos were briefly posted from February 1, 2021 to February 11, 2021, only on the Ignite Spirts website and @ignite.spirits Instagram account, which as of June 15, 2021 had a total of 370 followers.

23. Despite being aware of the use of the Photos, Creative Klick did not raise any concerns with Ignite until February 10, 2021, when Ignite informed Creative Klick that it would not be hiring Creative Klick to do a full marketing campaign for the Ignite Spirits' vodka. It was

only then that Creative Klick disregarded its earlier representations and asked Ignite Spirits to stop using the Photos.

24. Although DiGirolamo represented the Photos were free and part of the existing photoshoot, Ignite offered to pay $1,500 to Creative Klick for the Photos in an effort to settle the dispute.

25. Creative Klick agreed to Ignite's settlement proposal.

26. On February 10, 2021, Creative Klick submitted another invoice for "product photography shot for the Ignite Vodka." *See* 2/10/21 e-mail from DiGirolamo, attached hereto as **Exhibit 2**.

27. The February 10, 2021, invoice ("February 2021 Invoice") from Creative Klick to Ignite was for 10 retouched images that could be used for social media and the web. A copy of the February 2021 Invoice is attached as **Exhibit 3**.

28. Before Ignite could process payment for the February 2021 Invoice, Creative Klick breached the settlement agreement by attempting to withdraw the February 2021 Invoice via e-mail in which DiGirolamo stated **for the first time**: "The images were provided to Taylor Bell as a creative concept and vision our Agency had for the product. They were presented with our proposal to be hired for future work. Images were not released in any way." *See* 2/11/2021 e-mail from DiGirolamo, attached hereto as **Exhibit 4**.

**Counterclaim Count I**
**(Declaratory Judgment Against Creative Klick)**

29. Ignite incorporates by reference paragraphs 1 through 3 and 5 through 23 as if fully set forth herein.

30. Creative Klick alleges that it holds a valid copyright registration for the Photos, U.S Copyright Registration Number VA 2-237.

31. Upon information and belief, Creative Klick's application for the copyright registration for the Photos fails to limit its claim so as not to include materials that were previously registered, owned by another individual or entity, or is in the public domain such as goat skulls, bottles, and stock art.

32. The Goat Skull logo shown on the bottle in the photos is the subject of a prior copyright registration by Ignite's licensor.

33. On information and belief, the photos further include stock art that was not created by the copyright claimant.

34. By failing to limit its claim to only protected expression it created, Creative Klick knowingly claimed ownership of protected expression it did not create.

35. At least because Creative Klick falsely claimed ownership of material owned by others, its copyright registration is invalid.

36. The Counterclaim Plaintiffs seek a declaratory judgment from this Court that the Creative Klick's copyright registration is invalid.

**Counterclaim Count II**
**(Promissory Estoppel Against Creative Klick)**

37. Ignite incorporates by reference paragraphs 1 through 3 and 5 through 23 as if fully set forth herein.

38. Ignite detrimentally relied upon Creative Klick's representations that the Photos were being provided at no additional charge as part of an agreement for existing photoshoot for which Creative Klick was paid $3,000.00 and for which Ignite was a third party beneficiary.

39. Ignite also detrimentally relied upon Creative Klick's representations that the Photos may be used for social media and the web.

40. As a result of this reliance, the Photos were posted on the Ignite Spirits' website or Instagram account for a short period of time.

41. After Creative Klick notified Ignite of its false claims, Ignite removed the Photos and gave instructions to remove the accused images.

42. Despite its promises to Ignite that the images were included within the scope of the agreement for the original photoshoot, and its knowledge that the images were used by Ignite, and Ignite's prompt removal of the images, Creative Klick now sues Ignite for direct and indirect copyright infringement.

43. Injustice can only be avoided if Creative Klick is required to honor its original promises to Ignite.

44. Ignite has incurred the costs of defending the instant litigation, including the cost of attorneys' fees, as a result of Creative Klick's refusal to honor its promises to Ignite.

**Counterclaim Count III**
**(Breach of Third Party Beneficiary Contract – Against Creative Klick)**

38. Ignite incorporates by reference paragraphs 1 through 3 and 5 through 23 as if fully set forth herein.

39. 42 Bio, Inc., ("42 Bio") is a company whose employees sometimes perform services for Ignite. Creative Klick entered into an agreement with 42 Bio for Creative Klick to conduct a photoshoot and provide images from that photoshoot for use on social media.

40. The agreement between 42 Bio and Ignite was evidenced by the January 2021 Invoice for $3,000 which stated that the images resulting from the photoshoot may be used for social media and the web.

41. 42 Bio paid the January 2021 Invoice in full.

14

42. Creative Klick expressly agreed in writing to include the Photos that are the subject of its complaint in the photoshoot for which 42 Bio contracted. The agreement to include the additional Photos was for the benefit of third party Ignite.

43. Creative Klick breached the agreement by later asserting that the Photos could not be used by third party beneficiary on social media and the web.

44. As a result of this breach, Ignite has been damaged as a third party beneficiary of the agreement with 42 Bio.

45. Ignite has suffered the costs of defending the instant litigation, including the cost of attorneys' fees, as a result of Creative Klick's breach.

### Counterclaim Count IV (pled in the alternative to Count III).
### (Breach of Oral Contract – Against Creative Klick)

46. Ignite incorporates by reference paragraphs 1 through 3 and 5 through 23 as if fully set forth herein.

47. To the extent Creative Klick argues the Photos were not provided to Ignite pursuant to the agreement with 42 Bio, Creative Klick entered into an oral agreement with Ignite to provide the Photos to Ignite in exchange for Ignite considering to hire Creative Klick for marketing services.

48. Creative Klick, by its own admissions sought to provide the Photos to Ignite as samples of its work in hopes of obtaining future work from Ignite.

49. Creative Klick was aware of Ignite's uses of the Photos and made no objection until after Creative Klick was informed that Ignite would not be using its services on an ongoing basis.

50. To the extent Creative Klick may argue that the Photos were not fully licensed pursuant to its agreement with 42 Bio, Creative Klick then entered into a separate agreement with

15

Ignite under which Ignite was licensed to use the Photos as part of, and in return for, evaluating a potential business relationship with Creative Klick.

51. Pursuant to that agreement, the Photos could be used for social media and the web.

52. Creative Klick breached that agreement by withdrawing its consent to Ignite to use the Photos on social media and the web and then suing Ignite for copyright infringement after Ignite chose not to use Creative Klick's services.

53. As a result of Creative Klick's breach, Ignite has been damaged.

54. Ignite has suffered the costs of defending the instant litigation, including the cost of attorneys' fees, as a result of Creative Klick's breach.

### Counterclaim Count V
### (Breach of Settlement Agreement – Against Creative Klick)

55. Ignite incorporates by reference paragraphs 1 through 3 and 5 through 28 as if fully set forth herein.

56. After Creative Klick reneged on its agreement to allow Ignite to use the Photos, Ignite offered to pay $1,500.00 for the use of the Photos after Creative Klick and to settle the alleged dispute between Creative Klick and Ignite.

57. Creative Klick accepted Ignite's offer as evidenced by Creative Klick submitting the February 2021 Invoice.

58. Creative Klick then breached that settlement agreement by withdrawing the February 2021 Invoice in order to pursue the instant lawsuit.

59. As a result of Creative Klick's actions, Ignite has been damaged.

60. Ignite has suffered the costs of defending the instant litigation, including the cost of attorneys' fees, as a result of Creative Klick's breach.

**Third-Party Complaint – Count I**
**(Fraudulent Misrepresentation against DiGirolamo)**

61. Ignite incorporates by reference paragraphs 1 through 2 and 4 through 23 as if fully set forth herein.

62. DiGirolamo falsely represented to Ignite that the Photos were free as part of an existing photoshoot for which Creative Klick was paid $3,000.00.

63. As is clear from her subsequent litigation, DiGirolamo knew her statements were false at the time they were made.

64. On information and belief, DiGirolamo intentionally made the false statements to induce Ignite to use photos she provided, only later to sue Ignite for that use, thereby garnering fame for herself and Creative Klick based on the popularity of Dan Bilzerian and Ignite.

65. By suing Ignite for using the photos in reliance on DiGirolamo's representations, DiGirolamo and her company Creative Klick received widespread press coverage.

66. The widespread coverage DiGirolamo received was highly valuable, cost-free promotion of DiGirolamo personally, and Creative Klick, at the expense of false allegations made against Ignite and Dan Bilzerian.

67. On information and belief, if it were not for the fame DiGirolamo knew she would receive by launching the present litigation, DiGirolamo would not have sued Ignite and Mr. Bilzerian for use of photos she provided to them with the intent that they would be used by them.

68. On information and belief, DiGirolamo knew that her false representations concerning the Photos would induce Ignite and/or Ignite Spirits to use or post the Photos on social media and the web.

69. Ignite has been injured as a result of relying upon DiGirolamo's false statements.

17

70. Ignite has suffered negative publicity which adversely affects it reputation, the costs of defending the instant litigation, including the cost of attorneys' fees, as a result of their reliance on DiGirolamo's false statements.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant Ignite International, Ltd. respectfully requests that judgment be entered in its favor and against Creative Klick Agency, LLC and Jennifer DiGirolamo as follows:

    A.    That Creative Klick take nothing by its Complaint and that judgment be entered in favor of Ignite;

    B.    That this Court dismiss Creative Klick's Complaint with prejudice;

    C.    That the Court invalidates the copyright registration held by Creative Klick with respect to the Photos;

    D.    That damages be awarded in favor of Ignite pursuant to Counterclaim Counts II, III (or IV, in the alternative) and V of Ignite's Counterclaim against Creative Klick;

    E.    That damages be awarded in favor of Ignite pursuant to Count I of Ignite's Third Party Complaint against Jennifer DiGirolamo;

    F.    That Ignite be awarded its costs and fees incurred in defending this action; and

    G.    That the Court grant such other relief as the Court deems just and proper.

Respectfully submitted,

| | |
|---|---|
| Dated: June 17, 2021 | By: */s/Yolanda P. Strader*<br>Merrick L. Gross (FBN 716677)<br>mgross@carltonfields.com<br>William Giltinan (FBN 27810)<br>wgiltinan@carltonfields.com<br>Yolanda Strader (FBN 70212)<br>ystrader@carltonfields.com<br>CARLTON FIELDS, P.A.<br>700 NW 1st Avenue, Suite 1200<br>Miami, FL 33136<br>Telephone: (305) 530-0050<br>Facsimile: (305) 530-0055<br><br>*Ignite International, Ltd.* |

126296069.1